IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 07, 2015


**STATE OF TENNESSEE v. DARRELL ANDERSON**


**Appeal from the Circuit Court for Madison County**
**No. 13496     Roy B. Morgan, Jr., Judge**

_____


**No. W2014-01626-CCA-R3-CD  -  Filed August 3, 2015**

_____


The defendant, Darrell Anderson, was convicted of attempted aggravated assault, a Class D felony.  On appeal, he argues that the evidence is insufficient to sustain his conviction. Following our review of the briefs of the parties, the record, and the applicable law, we affirm the judgment of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**


JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and D. KELLY THOMAS, JR., J., joined.

George D. Norton, Jr., Selmer, Tennessee, for the Appellant, Darrell Anderson.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Jerry Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the Appellee, State of Tennessee.



**OPINION**


**FACTS AND PROCEDURAL HISTORY**


This case arose after the defendant brandished a pistol and threatened the victim. On the afternoon of the incident, the victim noticed that another woman had parked her vehicle in the victim's parking space.  The victim asked the woman why she was parked in that spot, and an altercation ensued.  The victim and the other woman exchanged blows, and the victim was taken to the ground.  She estimated that the fight lasted three to

five minutes. The victim's fiancée exited their home and separated the two women. The victim's grandmother also interceded to break up the fight.

The victim returned to her home and went inside. About forty-five minutes later, the victim was walking back and forth between her front yard and her porch discussing the fight with her mother and several others. She noticed a green BMW driving down the street at a high rate of speed. She saw the defendant exit the vehicle and display a pistol. The victim heard the defendant say that he "would light this b***h up." The victim believed that the defendant meant that he would fire the gun at her and her home. Once the victim saw the pistol, she "immediately" ran into her house. She explained that the pistol was not aimed directly at her but that it was pointed "[u]p at" the victim and the others on the porch. The victim testified that she felt "[s]cared for [her] life" and "threatened." She believed that the defendant was "[a]bout ten feet" away from her when she saw the gun, and she estimated that she was able to see the defendant for "[m]aybe 30 seconds to a minute."

Elisa Gray, the victim's mother, testified that she was in the victim's yard when she saw a green car "driving really fast" pull up beside the yard of the victim's next door neighbor. She saw the defendant exit the vehicle with a gun, and she heard him cock the weapon. She also heard the defendant say "something about lighting it up or something like that." She testified that she "was about six to eight feet away from" the defendant at the time. She recalled that the victim ran into her house as soon as the defendant got out of his vehicle with a gun. She was able to memorize the defendant's license plate number, and she later gave the number to police.

Laura Paar, a member of the Jackson Police Department, responded to a call at the victim's residence. She interviewed the victim, who was "very distraught" and "[f]rantic." She also interviewed other witnesses who were present and obtained a physical description of the defendant, along with his license plate number. She issued a "BOLO" containing the defendant's physical description and license plate number. Based on Officer Paar's report, Sergeant Chris Chestnut later compiled a photographic lineup that included a photograph of the defendant. He showed the lineup to the victim, and she identified the defendant.

The defendant did not present any proof. At the conclusion of the trial, the jury found the defendant not guilty of the charge of aggravated assault but convicted him of the lesser included offense of attempted aggravated assault.

2

## ANALYSIS

The defendant argues that the evidence is insufficient to sustain his conviction for attempted aggravated assault. Specifically, he posits that the evidence in the case was entirely circumstantial and that there is no evidence that he "knowingly attempted to commit the offense of aggravated assault."

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

"A person commits assault who: . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(2) (2010). The assault is aggravated if it "[i]nvolved the use or display of a deadly weapon." T.C.A. § 39-13-102(a)(1)(A)(iii). A person is guilty of criminal attempt "who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Viewing the evidence in the light most favorable to the State, the defendant arrived at the victim's residence with a pistol and threatened to open fire. Both the victim

3

and Ms. Gray testified that they saw the defendant holding a gun and threatening to "light it up." The victim testified that she was threatened by the pistol and feared for her life. She ran into the house as soon as she saw that the defendant was armed. There was sufficient evidence from which the jury could infer that the defendant took a substantial step toward intentionally or knowingly placing the victim in reasonable fear of imminent bodily injury by the use or display of a deadly weapon. The defendant is not entitled to any relief.

_____
JOHN EVERETT WILLIAMS, JUDGE